# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of William Thomas Moody, Respondent.

Appellate Case No. 2014-001889

---

Opinion No. 27453
Submitted September 16, 2014 – Filed October 15, 2014

---

## DISBARRED

---

Lesley M. Coggiola, Disciplinary Counsel, and Barbara
M. Seymour, Deputy Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

J. Calhoun Watson, Esquire, of Sowell Gray Stepp &
Laffitte, LLC of Columbia, for Respondent.

---

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to
disbarment with conditions.  Respondent requests the disbarment be imposed
retroactively to January 27, 2014, the date of his interim suspension.  In the Matter
of Moody, 407 S.C. 81, 754 S.E.2d 266 (2014).  We accept the Agreement and
disbar respondent retroactively to the date of his interim suspension.  In addition,
we impose the conditions set forth hereafter in this opinion.  The facts, as set forth
in the Agreement, are as follows.

## Facts

## Matter I

Respondent represented Client A in a contested estate case that was resolved several years ago. Ultimately, approximately $700,000 from the estate was placed in trust for the benefit of Client A until he reached the age of thirty. Respondent was named trustee of the trust. Most of the trust fund was placed with an independent broker and was invested properly.

Respondent invested $15,000 of Client A's trust funds in a commercial real estate venture arranged by respondent's friend. The venture was unsuccessful and the funds were lost. In 2013, when Client A turned thirty, respondent determined that he needed to repay the trust the funds lost in his investment, plus interest.

Respondent also represented the personal representative (Client B) of the Estate of John Doe. Respondent received $50,000 on behalf of the Doe Estate for renovations on estate property. Respondent deposited those funds into his law firm trust account on October 1, 2013.

On October 9, 2013, respondent registered an entity called HCJ Enterprises, LLC, with the South Carolina Secretary of State and named himself the registered agent. On October 11, 2013, at respondent's instruction, a check was written from the law firm trust account in the amount of $22,000 payable to HCJ Enterprises, LLC. Respondent used the check to open a bank account in the name of HCJ Enterprises, LLC.

On October 15, 2013, respondent wrote a check from the HCJ Enterprises, LLC, account in the amount of $19,176.16 payable to Client A to reimburse him for funds lost in the real estate venture, plus interest. On the same date, respondent cashed a check from the HCJ Enterprises, LLC, account in the amount of $2,300.

On October 23 and October 25, 2013, respondent made counter withdrawals from the HCJ Enterprises, LLC, account in the amounts of $300 and $200, respectively. Respondent used these funds for personal purposes.

On November 1, 2013, at respondent's direction, a second check was written from the client trust account to HCJ Enterprises, LLC, in the amount of $7,500. On the same date, respondent make a counter withdrawal of $4,000.

Between November 4 and November 14, 2013, respondent made cash withdrawals from the HCJ Enterprises' account totaling $3,350. Respondent used all of these funds for his own benefit.

On November 19, 2013, respondent obtained a check in the amount of $5,000 from Client B for the renovation project. Respondent did not place these funds in his trust account, but deposited them into the HCJ Enterprises' account. Respondent converted these funds to his own use. At the time of respondent's interim suspension, the balance in the HCJ Enterprises' account was $5.84.

Respondent acknowledges he used HCJ Enterprises, LLC, and the related bank account to misappropriate Doe Estate funds held in the law firm trust account. He admits there was no legitimate purpose for payment of $34,500 from the Doe Estate to Client A, HCJ Enterprises, LLC, or respondent.

On January 3, 2014, respondent wrote a check on a law firm petty cash account for $3,000 payable to Client B in an attempt to replace some of the misappropriated funds. At the time he wrote the check, the law firm petty cash account did not have sufficient funds to cover the check. Notice of the overdraft on the petty cash account alerted respondent's law partner (Partner) to the misappropriation of funds from the Doe Estate. Partner made arrangements to cover the check on the petty cash account, removed respondent as a signatory on the firm accounts, terminated the partnership, and reported respondent's conduct to the Commission on Lawyer Conduct (the Commission). In addition to the $3,000 paid from the petty cash account on January 3, 2014, respondent paid a total of $10,895.10 to or on behalf of the Doe Estate from petty cash and from personal funds.

## Matter II

Client C retained respondent to represent her in a partition action related to her mother's estate. Respondent successfully handled that matter.

In the meantime, a dispute arose between Client C and her brother (who was the personal representative of the mother's estate) about the distribution of personal property. Respondent agreed to represent Client C in that dispute. On November 9, 2010, respondent accepted a fee of $750 from Client C to assist her in resolving that dispute.

Respondent admits that he failed to diligently pursue the personal property dispute and that he failed to adequately communicate with Client C about the matter.

Although he had some discussions with Client C's brother in an attempt to settle the matter, respondent took no significant action in the matter for more than three years.

## Matter III

In January 2010, Client D and his two brothers retained respondent to represent them as plaintiffs in a civil matter involving a dispute with a neighbor and her landlords. Respondent represented Client D and his brothers in filing a lawsuit and participating in discovery and other pretrial matters. Respondent did not present Client D or his brothers with a formal fee agreement or with billing statements, but contacted Client D from time to time asking for payment.

The neighbor filed a motion to dismiss. Subsequently, all defendants filed a motion for summary judgment referencing documents attached to the neighbor's answer and her motion to dismiss. On October 29, 2013, a hearing was held on the motion for summary judgment. At that hearing, respondent protested, claiming that he had not received a copy of the answer. The judge continued the matter based on respondent's statement.

In fact, respondent had received a copy of the answer on June 18, 2012. Opposing counsel filed a motion for sanctions against respondent. Following the rescheduled motion hearing, the judge ruled in favor of the defendants, granting summary judgment on all but one cause of action. The judge held the issue of sanctions in abeyance.

On January 9, 2014, the day respondent was confronted by Partner about the $3,000 withdrawal from the law firm petty cash account, respondent sent a text message to Client D stating: "[t]o finish up this part of the case it looks like with time and costs about $3,000. Is that going to be a problem?" Respondent sent additional text messages to Client D asking that he deposit the fee into respondent's personal account, that the deposit be made in cash to avoid a hold by the bank, and he urged Client D to make the deposit immediately. Client D deposited the money as requested. Respondent acknowledges that the fee obtained from Client D and his brothers in advance of his work should have been placed in the law firm's trust account.

On January 10, 2014, respondent and the defendants' attorney agreed to have the case dismissed pursuant to Rule 40(j), SCRCP, to facilitate mediation and settlement on the remaining cause of action. On January 14, 2014, the judge

signed a form order dismissing the case pursuant to Rule 40(j). Client D stated respondent neither consulted with him or his brothers about the Rule 40(j) motion nor did he inform them that it was granted.

On January 27, 2014, respondent was placed on interim suspension. In the Matter of Moody, Id. Although he was suspended, respondent continued to communicate with Client D regarding the scheduling of mediation and other matters related to the civil action. During this communication, respondent did not advise Client D of his interim suspension or the Rule 40(j) dismissal of the case.

On February 5, 2014, Client D sent a text message to respondent inquiring about the opposing party's Facebook posting stating respondent had been suspended. Respondent responded with a text message that he was "not sure" where the opposing party got that information and that he would call Client D the following morning. On February 6, 2014, respondent called Client D and informed him of his suspension. Respondent still did not tell Client D about the Rule 40(j) dismissal. Client D discovered the dismissal when he retrieved his file from Partner who had been appointed to protect the interests of respondent's clients.

## Matter IV

Respondent represented Client E in a legal matter related to Client E's business. To settle the matter, Client E agreed to make monthly payments to the opposing party. Prior to respondent's interim suspension, Client E delivered to respondent a series of personal checks in the amount of $500, each payable to respondent. As it was Client E's intent that respondent make the payments to counsel for the opposing party on a monthly basis, Client E post-dated the checks.

Respondent delivered a total of $3,000 to the opposing party's counsel between April and November 2013. In December 2013 and January 2014, respondent negotiated Client E's checks, but rather than delivering them to the opposing party or his counsel, respondent converted the checks to this own use.

On January 27, 2014, respondent was placed on interim suspension and Partner was appointed to protect the interests of respondent's clients. In the Matter of Moody, Id. Following the suspension, Client E contacted respondent and respondent assured him that the payments were being made. Respondent did not

deliver the remaining checks to Partner.  Respondent converted four more checks between February and May 2014 for a total of $3,500.

On June 12, 2014, Partner sent Client E a letter from opposing counsel indicating Client E had not made the payments as agreed.  When Client E contacted respondent, respondent told him he would "look into it."  Respondent did not tell Client E that he had failed to make the payments as agreed.  On June 30, 2014, respondent delivered $3,500 in cash and the remaining unnegotiated checks to Client E.

## **Law**

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR:  Rule 1.2 (lawyer shall abide by client's decisions concerning objectives of representation); Rule 1.3 (lawyer shall act with diligence and promptness in representing client); Rule 1.4 (lawyer shall promptly inform client of any decision with respect to which client's informed consent is required, shall reasonably consult with client about means by which client's objectives are to be accomplished, and shall keep client reasonably informed about status of matter); Rule 1.7(a)(2) (lawyer shall not represent client if representation involves concurrent conflict of interest; conflict of interest exists if there is significant risk that representation of one or more clients will be materially limited by lawyer's responsibilities to another client); Rule 1.15(a) (lawyer shall hold property of clients or third persons in lawyer's possession in connection with representation separate from lawyer's own property); Rule 1.15(g) (lawyer shall not use any entrusted property to obtain personal benefit for lawyer or other person other than the legal or beneficial owner of the property); Rule 1.16 (upon termination of representation, lawyer shall take steps to extent reasonably practicable to protect client's interests, such as giving reasonable notice to client and surrendering property to which client is entitled); Rule 3.3 (lawyer shall not knowingly make false statement of fact to tribunal); Rule 5.5(a) (lawyer shall not practice law in a jurisdiction in violation of the regulation of law in that jurisdiction); Rule 8.4(b) (it is professional misconduct for lawyer to commit criminal act that reflects adversely on lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).  In addition, respondent admits he violated Rule 30(d) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR (suspended lawyer shall deliver to client being represented in pending matter any papers or other property to which client entitled).

Respondent also admits he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it is ground for discipline for lawyer to violated Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers).

## Conclusion

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state, retroactively to January 27, 2014, the date of his interim suspension.[1] In the Matter of Moody, supra. Further, we impose the following conditions:

1) within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission;

2) within one (1) year of the date of this opinion, respondent shall:

   a) refund the $750 fee paid by Client C;

   b) refund the $3,000 fee paid by Client D and his two brothers;

   c) pay any remaining funds owed to Partner as a result of respondent's misappropriation in Matter I; and

   d) reimburse the Lawyers' Fund for Client Protection for any funds paid out on his behalf; and

---

[1] Respondent's prior disciplinary history includes letters of caution issued in 2007 and 2010 warning respondent to adhere to some of the Rules of Professional Conduct cited in the current Agreement. See Rule 2(r), RLDE (fact that letter of caution has been issued shall not be considered in subsequent disciplinary proceeding against lawyer unless the caution or warning contained in letter of caution is relevant to the misconduct alleged in new proceedings).

3) complete the Legal Ethics and Practice Program Ethics School, Trust Account School, and Law Office Management Program prior to applying for readmission.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**